J-S28002-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.L.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.M., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 833 EDA 2021 |

Appeal from the Decree Entered March 31, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000059-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: S.L.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.M., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 834 EDA 2021 |

Appeal from the Order Entered March 31, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000068-2019

BEFORE:   BOWES, J., DUBOW, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                    Filed: October 13, 2021

A.M. ("Father") appeals from the decree entered on March 31, 2021, which terminated involuntarily his parental rights to his daughter, S.L.D., born in December 2013.  In addition, Father appeals from the order entered that

---

[*] Retired Senior Judge assigned to the Superior Court.

same day, which changed S.L.D.'s permanent placement goal from return to parent or guardian to adoption. We affirm.

The record reveals that the Philadelphia Department of Human Services ("DHS") filed a dependency petition regarding S.L.D. on January 15, 2019. Therein, DHS averred that it had received a child protective services report on December 5, 2018, alleging that S.L.D.'s teeth were black, decayed, and possibly infected, and that Father refused repeated requests by S.L.D.'s school to take S.L.D. to a dentist. In addition, the report alleged Father failed to take S.L.D. to an optometrist after she failed a vision exam, and that S.L.D. was dirty and malodorous at school. The report included allegations of aggressive behavior by Father, such as threatening a school nurse, and allegations that Father had a criminal record and may have substance abuse issues.

DHS averred that it investigated the report on December 6, 2018, and discovered S.L.D. was in the care of her paternal aunt in New Jersey. Father informed DHS that he was hospitalized, while Mother was reportedly incarcerated. S.L.D. later returned to Father's care, and DHS staff visited Father and S.L.D. at their home on December 11, 2018. DHS averred that it directed Father to apply for medical insurance for S.L.D. and to take S.L.D. to a dentist. DHS provided Father with a letter to assist him in applying for medical insurance. Although Father brought S.L.D. to a health clinic, where she was examined and referred for further dental treatment, he failed to comply with DHS's directive to apply for medical insurance.

Following a hearing on January 28, 2019, the trial court adjudicated S.L.D. dependent, removed S.L.D. from Father, transferred custody to Mother, and designated S.L.D.'s permanent placement goal as remain with parent or guardian. S.L.D. remained in Mother's care until Mother died of a drug overdose in April 2019. The court entered a permanency review order on May 16, 2019, placing S.L.D. in foster care and designating her new permanent placement goal as return to parent or guardian, *i.e.*, Father.

Meanwhile, the Community Umbrella Agency ("CUA") prepared a series of Single Case Plan ("SCP") goals to aid Father in reunifying with S.L.D. The SCP goals included maintaining sobriety, stable behavioral health, and a healthy relationship with S.L.D. through supervised visitations. It also required that Father complete parenting and anger management programs through the Achieving Reunification Center ("ARC"). For approximately one year, Father failed to make progress toward compliance with these goals.

On January 24, 2020, DHS filed petitions to terminate Father's parental rights to S.L.D. involuntarily pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b), and to change S.L.D.'s permanent placement goal from return to parent or guardian to adoption. Due to the COVID-19 pandemic, and the withdrawal of Father's prior counsel and appointment of his current counsel, the trial court did not hold a hearing on the petitions until March 31, 2021. At the hearing, the court heard testimony from the CUA case manager, Tamika

Palmer; S.L.D.'s foster mother, M.K.; and Father.[1]  At the conclusion of the hearing, the court announced that it would grant DHS's petitions.  The court memorialized this decision by entering a decree that same day terminating Father's parental rights and an order changing S.L.D.'s goal.  Father timely filed notices of appeal, along with concise statements of errors complained of on appeal, on April 23, 2021.

The trial court issued an opinion on June 16, 2021, in which it recited the relevant law and the testimony presented during the March 31, 2021, hearing, and concluded summarily that the evidence supported its decisions. *See* Trial Court Opinion, 6/16/21, at 11-23.  The court also directed our attention to the portion of the certified record where it explained from the bench that: (1) Father lacked credibility and failed to comply with his SCP goals, and (2) that the court was persuaded by the testimony of Tamika Palmer, the CUA case manager.  *Id*. at 24-23 (quoting N.T., 3/31/21, at 86-92).

Father raises the following claims for our review:

1. Whether the trial court committed reversible error, when it involuntarily terminated Father's parental rights where such determination was not supported by clear and convincing evidence under the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5) and (8)?

---

[1] The trial court appointed legal counsel and a separate guardian *ad litem* to represent S.L.D.'s interests.  The guardian *ad litem* did not offer his position at the hearing, but S.L.D.'s legal counsel indicated that he had spoken with the then-seven-year-old, who advised that she is "scared" of Father and "does not want to be returned to" him.  N.T., 3/31/21, at 90-91.

2. Whether the trial court committed reversible error when it involuntarily terminated Father's parental rights without giving primary consideration to the effect that the termination would have on the developmental, physical and emotional needs of the child as required by the Adoption Act, 23 Pa.C.S. § 2511(b)?

3. Whether the trial court abused its discretion in granting a goal change to adoption, where the goal change from reunification to adoption was not supported by clear and convincing evidence?

4. Whether the trial court erred because the evidence was overwhelming and undisputed that Father demonstrated a genuine interest and sincere, persistent, and unrelenting effort to maintain a parent-child relationship with his child[?]

Father's brief at 8.[2]

Initially, we address the decree terminating Father's parental rights to S.L.D. involuntarily. Our standard of review in termination of parental rights appeals requires us to accept the findings of fact and credibility determinations of the trial court if the record supports them. **In re T.S.M.**, 71 A.3d 251, 267 (Pa. 2013) (citing **In re Adoption of S.P.**, 47 A.3d 817, 826 (Pa. 2012)). If the record supports the court's findings, we must determine whether the court committed an error of law or abused its discretion. **Id**. An abuse of discretion

_____

[2] Although Father purports to raise four claims in his statement of questions involved, he divides his argument into five sections. **Cf**. Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued[.]"). Moreover, the five sections of Father's argument relate to the first, second, and third claims listed in his statement of questions involved. Father makes no effort to argue his fourth claim in its own section but seems to weave it into his other claims. Because Father does not develop his fourth claim in a separate section, we will not address it separately. In addition, for the sake of clarity, we will refer to Father's claims by the number he assigns them in his statement of questions involved, rather than the letter he uses in the argument section of his brief.

- 5 -

does not occur merely because the record could support a different result. *Id*. (citing *In re Adoption of S.P.*, *supra* at 827). We may find an abuse of discretion "'only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.'" *Id*. (quoting *In re Adoption of S.P.*, *supra* at 826).

Pennsylvania's Adoption Act governs involuntary termination of parental rights proceedings. *See* 23 Pa.C.S. § 2101-2938. It requires a bifurcated analysis, in which the trial court focuses first on the parent's conduct pursuant to § 2511(a). *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citing *In re R.J.S.*, 901 A.2d 502, 508 (Pa.Super. 2006)). If the court determines that the party seeking termination has established statutory grounds pursuant to § 2511(a), it must then turn its attention to § 2511(b), which focuses on the child's needs and welfare. *Id*. A key aspect of the court's needs and welfare analysis is discerning whether the child has an emotional bond with his or her parent and what effect severing that bond may have on the child. *Id*. (citing *In re R.J.S.*, *supra* at 508; *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006)). The party seeking termination bears the burden of proof under both § 2511(a) and (b) by clear and convincing evidence. *In re C.P.*, *supra* at 520 (citing *In re B.L.L.,* 787 A.2d 1007 (Pa.Super. 2001)).

Instantly, the trial court terminated Father's parental rights pursuant to § 2511(a)(1), (2), (5), (8), and (b). We need only agree with the court as to any one subsection of § 2511(a), in addition to § 2511(b), to affirm. *In re*

**B.L.W.**, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we analyze the court's decision pursuant to § 2511(a)(8) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> > (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(8) and (b).

We begin by considering whether the trial court committed an error of law or abused its discretion pursuant to § 2511(a)(8), as Father alleges in his first claim. This subsection provides a three-prong test requiring that courts consider (1) whether the child has been removed from the parent for twelve months or more, (2) whether the conditions which led to the removal continue

to exist, and (3) whether termination of parental rights would best serve the child's needs and welfare. ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1275-76 (Pa.Super. 2003). With respect to the second prong of § 2511(a)(8), the Adoption Act does not require that the court evaluate a parent's willingness or ability to remedy the conditions which led to the removal of his or her child. ***In re Adoption of R.J.S.***, ***supra*** at 511. Further, this Court defines the relevant "conditions" somewhat broadly. ***See In re C.L.G.***, 956 A.2d 999, 1003-07 (Pa.Super. 2008) (*en banc*) (concluding a parent failed to remedy her "drug issues" for the purposes of § 2511(a)(8), where she was incarcerated for drug offenses after her child entered foster care). Regarding the third prong, the § 2511(a)(8) needs and welfare analysis is distinct from the § 2511(b) needs and welfare analysis, and courts must complete the § 2511(a)(8) needs and welfare analysis before reaching § 2511(b). ***Id***. at 1009.

In his brief, Father focuses on challenging the trial court's findings with respect to the second prong of § 2511(a)(8), contending that he "beat the odds" and remedied the conditions which led to S.L.D.'s removal. Father's brief at 19-20. Father maintains that he obtained drug and alcohol and mental health treatment, attended visitation, completed parenting and anger management programs, and made improvements to his home. ***Id***. at 19. He emphasizes that he achieved this while coping with his own mental illness as well as the death of Mother and S.L.D.'s paternal grandmother. ***Id***. Further,

Father complains that there was little evidence regarding whether he received "opportunities to avail himself of programs in order to continue to grow and strengthen his bond with his child." *Id*. at 20.

We find no merit to Father's contentions. The trial court removed S.L.D. from Father's care when it adjudicated her dependent on January 28, 2019, and transferred custody to Mother. Although DHS filed its termination petition on January 24, 2020, less than twelve months after the removal, the court did not terminate Father's parental rights until March 31, 2021, after S.L.D. had been removed for more than two years. Thus, DHS satisfied the first prong of § 2511(a)(8), which requires that S.L.D. had been removed from Father's care for at least twelve months.

Regarding the second prong of § 2511(a)(8), that the conditions which led to S.L.D.'s removal continued to exist, the record indicates DHS removed S.L.D. due primarily to Father's neglectful parenting and aggressive behavior. CUA prepared SCP goals to aid Father in addressing these conditions. As we enumerated *supra*, CUA case manager, Ms. Palmer, testified that Father's SCP goals were to maintain sobriety, maintain stable behavioral health, maintain a healthy relationship with S.L.D. through supervised visits, and to complete parenting and anger management programs through ARC. N.T., 3/31/21, at 11. Ms. Palmer explained that Father did not comply with any of these goals until after DHS filed the January 24, 2020 termination petition. *Id*. at 12, 16-18.

Specifically, Ms. Palmer testified that Father did not enroll in drug and alcohol treatment until after January 24, 2020, and that his first treatment session was on April 29, 2020. *Id*. at 12. Father did not enroll in a behavioral health treatment program until even later, in September 2020. *Id*. at 14. Likewise, Ms. Palmer testified that Father did not visit with S.L.D. regularly until after January 24, 2020. *Id*. at 16. She explained that Father previously had not contacted S.L.D. between May 2019 and November or December 2019. *Id*. at 29-30, 42-43. As it relates to Father's parenting and anger management goals, Ms. Palmer testified that Father received two referrals to ARC. *Id*. at 17. He failed to attend the initial referral scheduled in November 2019. *Id*. at 17-18. Thereafter, he obtained a second referral in February 2020, one month after DHS filed the petition on January 24, 2020, and he eventually completed the parenting and anger management components in August 2020. *Id*.

Father's failure to begin complying with his goals until after DHS filed the petition is critical, because the Adoption Act directs that, when considering any petition filed pursuant to § 2511(a)(1), (6), or (8), "the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition." 23 Pa.C.S. § 2511(b). Although Father argues that he complied with his SCP goals and remedied the conditions which led to S.L.D.'s removal, it is apparent that he did not initiate his efforts until after he received notice

- 10 -

of the termination proceedings. As a result, the court could not consider his belated efforts when reaching its decision pursuant to § 2511(a)(8). Our review of the record supports the court's conclusion that the conditions which led to S.L.D.'s removal continued to exist, and that the second prong of § 2511(a)(8) was satisfied.[3]

Finally, our review also supports the trial court's findings as to the third prong of § 2511(a)(8). As we discuss *infra*, in our analysis of § 2511(b), termination of Father's parental rights will serve S.L.D.'s developmental, emotional, and physical needs and welfare due to her need for permanence and stability, which Father cannot or will not provide, and her lack of a significant beneficial bond with Father. Accordingly, we discern no error of law or abuse of discretion in the court's conclusion that DHS satisfied all three prongs of § 2511(a)(8).

Next, we consider whether the trial court committed an error of law or abused its discretion pursuant to § 2511(b), which Father raises in his second claim. As explained above, § 2511(b) focuses on the needs and welfare of

---

[3] To the extent Father's assertion that there was little evidence as to whether he received "opportunities to avail himself of programs in order to continue to grow and strengthen his bond with his child" might be construed as a claim that he did not receive reasonable reunification efforts prior to the termination of his parental rights, we reject that claim. **See** Father's brief at 20. This Court has explained that reasonable reunification efforts are not a prerequisite to the termination of parental rights under § 2511(a)(8). **See In re Adoption of C.J.P.**, 114 A.3d 1046, 1055 (Pa.Super. 2015) (discussing **In re D.C.D.**, 105 A.3d 662 (Pa. 2014)).

the child, which includes an analysis of any emotional bond that S.L.D. may have with Father and the effect severing that bond. *L.M.*, *supra* at 511. The key questions when conducting this analysis are whether the bond is necessary and beneficial and whether severance of the bond will cause the child extreme emotional consequences. *In re Adoption of J.N.M.*, 177 A.3d 937, 944 (Pa.Super. 2018), *appeal denied*, 183 A.3d 979 (Pa. 2018) (quoting *In re E.M.*, 620 A.2d 481, 484–85 (Pa. 1993)). It is important to recognize that the existence of a bond, while significant, is only one of many factors courts should consider when addressing § 2511(b). *In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015) (quoting *In re N.A.M.,* 33 A.3d 95, 103 (Pa.Super. 2011)). Other factors include "the safety needs of the child, and . . . the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." *Id*.

Father contends that the trial court failed to fully consider S.L.D.'s needs and welfare. Father's brief at 23. He repeats his previous argument that he eventually complied with his SCP goals and maintains that the court terminated his parental rights just as he was finally ready to parent S.L.D. *Id*. at 22-23. Father asserts that he has been "continually attempting" to bond with S.L.D., and that the court's decision denied him the opportunity to develop that bond further. *Id*. at 22-23. Although Father acknowledges that he moved to Texas for a time, which resulted in his being absent from S.L.D.'s

life, he insists that he moved because of "his devotion and attempts to improve living conditions for his family[.]" *Id*. at 23.

Contrary to Father's contention that he "continually" attempted to bond with S.L.D., Ms. Palmer testified that Father seemingly abandoned S.L.D. by having no contact with her for six or seven months between early May 2019 and November or December 2019. N.T., 3/31/21, at 29-30, 42-43. Father explained his sudden absence by testifying that he moved to Texas for a job after the adjudication, but "shut down" when Mother died, and then returned to Pennsylvania and "laid in my bed for three months, four months." *Id*. at 61-63. The record also indicates that seven-year-old S.L.D. does not want to return to Father's care, a sentiment confirmed both by S.L.D.'s foster mother, M.K., and the child's legal counsel. *Id*. at 51-52, 90-91. Therefore, while Ms. Palmer opined that S.L.D. shares some bond with Father, the facts of this case militate against the conclusion that the bond is necessary or beneficial to S.L.D., or that she will suffer extreme emotional consequences due to the severance of the bond. *Id*. at 17; *see also Matter of Adoption of M.A.B.*, 166 A.3d 434, 449 (Pa.Super. 2017) (explaining, "a child develops a meaningful bond with a caretaker when the caretaker provides stability, safety, and security regularly and consistently to the child over an extended

period of time.").[4]  Hence, severing the parent-child bond is not adverse to S.L.D.'s best interests.

Ultimately, the record confirms that S.L.D. requires permanence and stability after over two years as a dependent child, which Father has demonstrated he cannot or will not provide.  Terminating Father's parental rights will permit S.L.D. to pursue permanence.  Although S.L.D. shares a bond with Father, it was within the trial court's discretion to weigh that bond against other factors and conclude that the benefits of termination were more significant.  Thus, we discern no basis to disturb the court's conclusion that termination will best serve S.L.D.'s needs and welfare pursuant to § 2511(b).

Father's final claim challenges the juvenile court order changing S.L.D.'s placement goal from reunification to adoption.  We review a goal change order for an abuse of discretion.  *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).  When considering a goal change petition, "[t]he best interests of the child, and not the interests of the parent, must guide the trial court.  As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will

_____

[4] Contrary to the trial court's characterizations in its opinion, M.K. is not a pre-adoptive resource for S.L.D.  *See* Trial Court Opinion, 6/16/21, at 20.  M.K. stated during the hearing that she was no longer interested in adopting S.L.D. but would consider permanent legal custody, and that a maternal aunt "has stepped up and asked" if she could adopt S.L.D.  N.T., 3/31/21, at 49-50, 53. Nonetheless, we note that a pre-adoptive resource is not required for a court to terminate parental rights.  *See*, *e.g.*, *In re Adoption of C.D.R.*, *supra* at 1220 (affirming the termination of parental rights where there was no evidence indicating that the foster family was pre-adoptive).

summon the ability to handle the responsibilities of parenting." *In re A.B.*, 19 A.3d 1084, 1089 (Pa.Super. 2011) (citations and quotation marks omitted).

Father argues, once again, that he complied with his SCP goals, and that the trial court abused its discretion by changing S.L.D.'s permanent placement goal just as he was positioned "to more fully bond with" her. Father's brief at 24-25. For the reasons already discussed throughout this memorandum, Father's claim is meritless. In sum, Father failed to comply with his goals in a timely manner and has shown himself unwilling or incapable of providing S.L.D. with permanence and stability. Moreover, while S.L.D. shares a bond with Father, the certified record confirms that this bond is not critical, and that she would prefer not to return to Father's care. Thus, contrary to Father's argument, the record supports the juvenile court's finding that it does not serve S.L.D.'s best interests to preserve the goal of reunification. Accordingly, we do not disturb the goal change order.

For all of the foregoing reasons, we do not discern an error of law or abuse of discretion in the trial court's decision to terminate Father's parental rights to S.L.D. and change S.L.D.'s permanent placement goal to adoption.

Decree affirmed. Order affirmed.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/13/21